UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAKEDA PHARMACEUTICAL CO, LIMITED, et al.<br><br>Plaintiff,<br><br>v.<br><br>ZYDUS PHARMACEUTICALS USA INC., et al.<br><br>Defendant. | Civil Action No. 10-1723 (JAP)<br><br>**OPINION** |

PISANO, District Judge.

Plaintiffs Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals North America, Inc., Takeda Pharmaceuticals LLC, Takeda Pharmaceuticals America, Inc., (collectively, "Takeda") and Ethypharm, S.A. ("Ethypharm," together with Takeda, "Plaintiffs") bring this patent infringement action under the Hatch-Waxman Act against defendants Zydus Pharmaceuticals (USA) Inc. and Cadila Healthcare Limited (together, "Defendants") claiming infringement of three patents alleged to cover Takeda's Prevacid SoluTab product ("SoluTab"). These patents are U.S. Patent Nos. 6,328,994 (the " '994 patent"), 7,431,942 the " '942 patent"), and 5,464,632 (the " '632 patent"). Presently before the Court is a motion by Plaintiffs to dismiss Defendants' Seventh Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike certain allegations in the counterclaims

of patent misuse pursuant to Rule 12(f).  The Court considers the matter without oral argument pursuant to Rule 78.  For the reasons below, Plaintiffs' motion is granted.

## A.  Defendants' Counterclaims

Defendants Second Amended Answer and Counterclaims contain seven counterclaims.  The Seventh Counterclaim, challenged in its entirety by Plaintiffs, alleges that the '632 patent is unenforceable due to patent misuse.  Two types of misuse are alleged.  First, Defendants allege that Takeda, "at the urging of" Ethypharm, "intentionally mislisted [the '632 patent] in the Orange Book[1] with respect to" SoluTab.  Counterclaim ¶ 43.  Defendants assert that Plaintiffs listed the '632 patent in the Orange Book even though "they were well aware that [the '632 patent] does not cover in any of its claims the actual composition of the product [SoluTab].  *Id.* ¶ 45.  *See also id.* ¶ 47 ("At the time of the listing, and at the time of the commencement of this suit, [Plaintiffs] were aware that none of the claims of [the '632 patent] covered the actual composition of [SoluTab]." ).  Defendants' assert that as a result of the alleged mislisting, under the Hatch-Waxman statutory scheme Plaintiffs were able to obtain a 30-month stay from the FDA's final approval of Defendants' ANDA by filing a timely infringement suit.

Second, Defendants allege that Plaintiffs, being aware that the '632 patent did not cover SoluTab, falsely marked SoluTab's packaging with the '632 patent.  It is asserted that Plaintiffs "purposely undertook deceitful marking of the patent number on its labeling affixed to each and every bulk product package," and understood that by doing so "they were deceitfully indicating to the public that the product contained therein was protected by such patent."  *Id.* ¶ 51.  Defendants also bring a *qui tam* action pursuant to 35 U.S.C. § 292.

---

[1] When the FDA approves a new drug application, it publishes a listing of the drug and related patents in *Approved Drug Products with Therapeutic Equivalence Evaluations*, also known as the "Orange Book."

Three other counterclaims contain allegations of patent misuse. In the Fourth, Fifth and Sixth Counterclaims, which seek declarations of invalidity as to the '994 patent, the '942 patent and the '632 patent, respectively, Defendants allege that the claims in each of the patents are "invalid for failure to satisfy the provisions of the patent laws of the United States." *Id.* ¶¶ 31, 35, 39. Immediately thereafter, Defendants further allege that "the filing of an objectively baseless lawsuit based on a patent that is understood to be invalid for obviousness and continuing the prosecution of such case … constitutes patent misuse…". *Id.* ¶¶ 32, 36, 40.

Plaintiffs move to dismiss the Seventh Counterclaim and to strike the patent misuse allegations of the invalidity counterclaims (specifically paragraphs 32, 36 and 40). First, they allege that the Hatch-Waxman Act does not permit Defendants' patent misuse counterclaim based on mislisting. Second, they contend that Defendants do not adequately plead mislisting or false marking under the heightened pleading standard of Federal Rule of Civil Procedure 9(b) or under Rule 8's notice pleading requirements. As to the Seventh Counterclaim, Plaintiffs allege that Defendants do not set forth any supportive facts as to: (a) how SoluTab falls outside the scope of the '632 Patent; (b) Plaintiffs' knowledge of the same; (c) Plaintiffs' deceptive intent with respect to either the purported mislisting or the false marking; and (d) how Ethypharm played any role in the purported mislisting or false marking of Takeda's SoluTab. Similarly, with respect to the allegations of patent misuse within the invalidity counterclaims, Plaintiffs contend that Defendants do not set forth any supportive facts as to (a) the specific prior art rendering each of the three patents-in-suit obvious; (b) Plaintiffs' knowledge of the same; and (c) the "objectively baseless" nature of this lawsuit as to each of the three patents-in-suit.

**B.  Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  The Supreme Court set forth the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Id.* at 555 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]." (internal quotation marks omitted)).  Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ..." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

The Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  When evaluating a motion to dismiss for failure to state a claim, district courts conduct a two-part analysis.

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then

4

> determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir.2009) (quoting *Iqbal*, 129 S.Ct. at 1949-50). A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler*, 578 F.3d at 211 (citations omitted).

**C.  Analysis**

1.  Whether Defendants' Misuse Claim is Precluded

The Court first addresses Plaintiffs' argument that the Hatch-Waxman Act does not permit Defendants to assert a patent misuse counterclaim based on the allegedly improper listing of the '632 patent in the Orange Book. Patent misuse is one of the equitable defense to patent infringement. *See U.S. Philips Corp. v. International Trade Com'n*, 424 F.3d 1179, 1184 (Fed. Cir. 2005). "The patent misuse doctrine, born from the equitable doctrine of unclean hands, is a method of limiting abuse of patent rights separate from the antitrust laws. *B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419, 1426 (Fed. Cir. 1997). "The key inquiry under this fact-intensive doctrine is whether, by imposing the condition, the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." *Id.* (quotations omitted).

In support of their argument, Plaintiffs first point to the authorization provided the Act for a defendant in an infringement suit to assert a counterclaim seeking an order requiring an

NDA holder to correct or delete patent information it submitted for listing in the Orange Book. *See* 21 U.S.C. § 355(j)(5)(C)(ii). Title 21, Section 355(j)(5)(C)(ii) of the United States Code provides as follows:

> (ii) Counterclaim to infringement action
>
> > (I) In general
> >
> > If an owner of the patent or the holder of the approved application under subsection (b) of this section for the drug that is claimed by the patent or a use of which is claimed by the patent brings a patent infringement action against the applicant, the applicant may assert a counterclaim seeking an order requiring the holder to correct or delete the patent information submitted by the holder under subsection (b) or (c) of this section on the ground that the patent does not claim either—
> >
> > > (aa) the drug for which the application was approved; or
> > >
> > > (bb) an approved method of using the drug.
> >
> > (II) No independent cause of action
> >
> > Subclause (I) does not authorize the assertion of a claim described in subclause (I) in any civil action or proceeding other than a counterclaim described in subclause (I).

21 U.S.C. § 355(j)(5)(C)(ii). Plaintiffs argue that this provision limits counterclaims based upon mislisting to those specified in the statute.

Plaintiffs also rely upon *Schwarz Pharma, Inc. v. Teva Pharmaceuticals USA, Inc.*, 2005 WL 4158850 (D.N.J. 2005). In the context of a Hatch-Waxman infringement action, the court in *Schwarz Pharma* denied a motion to amend that sought to add a counterclaim for patent misuse based on facts alleging the improper listing of a patent in the Orange Book. Relying on primarily on *Mylan Pharmaceuticals, Inc. v. Thompson*, 268 F.3d 1323 (Fed. Cir.

6

2001) ("*Mylan*"), the court in *Schwarz Pharma* held that "improper listing in the Orange Book cannot be the basis of a misuse defense." 2005 WL 4158850 at *7.

*Mylan* involved a claim that a particular patent was improperly listed in the Orange Book because the patent did not claim a drug for which an NDA had been submitted, as is required by 21 U.S.C. § 355(b)(1) ("The applicant shall file with the application the patent number and the expiration date of any patent which claims the drug for which the applicant submitted the application or which claims a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug."). In *Mylan*, an ANDA applicant filed a declaratory judgment action against the NDA holder and the FDA alleging that the patent at issue had been improperly listed in the Orange Book because the patent did not cover the branded drug product or a method for using it. The plaintiff sought declaratory and injunctive relief including an injunction against the NDA holder requiring it to delist the patent from the Orange Book and an injunction against the FDA to immediately approve the plaintiff's ANDA. The district court granted the relief sought but, on appeal from the NDA holder the Federal Circuit reversed, finding that the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 301, *et seq.*, did not provide a private right of action for "delisting" a patent from the Orange Book. The Federal Circuit rejected the ANDA applicant's argument that its action arose under the patent laws (Title 35 of the United States Code):

> Mylan[, the ANDA applicant,] argues that the action Bristol, the declaratory judgment defendant, would have brought is an action for patent infringement under 35 U.S.C. § 271(e)(2). [2] This section provides that an applicant infringes a patent if it submits an ANDA "for a drug

---

[2] In a declaratory judgment action, to determine which federal law is the basis of the declaratory plaintiff's cause of action, the court looks to the action that the declaratory defendant would have brought. *Mylan*, 268 F.3d at 1330.

7

> claimed in a patent or the use of which is claimed in a patent ... before the expiration of such patent." 35 U.S.C. § 271(e)(2) (1994). Mylan argues that had it filed an ANDA with a Paragraph IV certification, it would have been charged with infringing the '365 patent. One of the defenses, which Mylan argues would be available to it in Bristol's hypothetical patent infringement suit, is that Mylan should not have been required to file a Paragraph IV certification in the first instance because the '365 patent did not claim BuSpar or an approved method of using BuSpar, and accordingly, Bristol improperly submitted the '365 patent for listing in the Orange Book.
>
> This assertion, however, is not a recognized defense to patent infringement.

268 F.3d at 1330-31 (footnote added).

Having rejected the ANDA applicant's argument that its claim arose under the patent laws, the court then determined that the Hatch-Waxman Amendments to the FFDCA also provided no avenue for the relief sought. Ultimately, the court concluded that the ANDA applicant was improperly attempting to bring an action for delisting under the FFDCA. *See* 268 F.3d at 1332 ("[W]e are forced to conclude that Mylan's action here … is in essence an attempt to assert a private right of action for 'delisting' under the FFDCA.")

As noted in *Schwarz Pharma*, "[i]n response to *Mylan*, Congress created a limited cause of action under FFDCA allowing a party accused of infringement under 35 U.S.C. § 271(e)(2) to bring a counterclaim to delist an allegedly improperly listed patent. 21 U.S.C. § 355(c)(3)(D)(ii)(I)." 2005 WL 4158850, *7 n.1. As noted above, this provision permits a counterclaim seeking an order requiring an NDA holder to correct or delete an Orange Book listing.

Not all courts are in agreement with *Schwarz Pharma* on the question of whether mislisting can form the basis of a misuse counterclaim. *See Eli Lilly and Co. v. Wockhardt Ltd.*, 2010 WL 2605855 (S.D. Ind. June 22, 2010) (noting disagreement among courts;

8

finding not futile amendments to add defense and counterclaim of patent misuse based upon improper listing); *Novo Nordisk A/S v. Caraco Pharmaceutical Laboratories, Ltd.*, 649 F.Supp.2d 661 (E.D. Mich. 2009) (rejecting *Schwarz Pharma*; denying motion to strike misuse defense based upon allegations of improper listing); *Astra Aktiebolag v. Kremers Urban Development Co.*, 61 U.S.P.Q.2d 1767 (S.D.N.Y. 2001) (denying motion to dismiss counterclaim alleging misuse where it was alleged the patent owner falsely certified that listed patent covered the approved product and that such false certification forced defendant to file a Paragraph IV certification). As this Court views the issue, based upon its reading of *Mylan*, the question boils down to whether Defendant's counterclaim is substantively analogous to a private action for violation of the FFDCA, as the FFDCA does not create a private cause of action, but rather confers all enforcement authority to the United States. 21 U.S.C. § 337(a); *In re Orthopedic Bone Screw Prod. Liab. Litig*, 193 F.3d 781, 788 (3d Cir.1999) ("It is well settled ... that the [F]FDCA creates no private right of action."). As *Mylan* held, this rule extends to actions based solely on a party's violation of a requirement imposed by the FFDCA. *Mylan*, 268 F.3d at 1332; *see also Mylan Lab., Inc. v.. Matkari*, 7 F.3d 1130, 1139 (4th Cir.1993) (holding that claim brought under Lanham Act based solely on alleged violation of FFDCA violates principle that FFDCA does not create private cause of action). However, as noted in *Mylan*, the standards enunciated by the FFDCA may be used to support an independent cause of action. 268 F.3d at 1332. *Accord in re Orthopedic Bone Screw Prod. Liab. Litig.*, 193 F.3d at 790 ("A claim of civil conspiracy cannot rest solely upon the violation of a federal statute for which there is no corresponding private right of action."); *Zenith Lab., Inc. v. Abbott Lab.*, 1996 WL 33344963, *5 (D.N.J. Aug. 7, 1996) ("[A]

9

violation of the FFDCA that gives rise to a separate cause of action does not necessarily lead to the conclusion that such a claim is preempted.").

By way of its patent misuse counterclaim, Defendants are alleging that the '632 patent should be deemed unenforceable because Plaintiffs have invoked the provisions of the Hatch-Waxman Act to "impermissibly broaden[] the physical or temporal scope of the patent grant with anticompetitive effect." *B. Braun Medical, Inc.*, 124 F.3d at 1426. As such, reference to the standards enunciated by FFDCA is required to support the claim that Plaintiffs have improperly broadened the scope of their patent. However, like in *Mylan*, Defendants' misuse counterclaim here does not merely use those standards to support an independent claim. The central, if not sole, element of Defendants' misuse claim is "that [Plaintiffs] improperly listed the ['632] patent because it does not comply with the requirements" of the FFDCA. *Mylan*, 268 F.3d at 1332. Indeed, the counterclaim alleges that

> an [NDA] applicant is permitted ONLY to "submit information … on those patents that claim the drug substance that is the subject of the pending or approved application or that claim a drug substance that is the same as the active ingredient that is the subject of the approved or pending application." … Counterclaim Defendants listed [the '632 patent], containing solely composition claims, in the Orange Book although they were well aware that [the '632 patent] does not cover in any of its claims the actual composition of [SoluTab]. Such mislisting constitutes patent misuse.

Counterclaim ¶¶ 44-45 (citation omitted). As such, the Court agrees with Plaintiffs' argument that Defendants' patent misuse counterclaim is precluded here. At its core, Defendants' counterclaim alleges no more than that Plaintiffs violated the FFDCA. Therefore, such a claim is prohibited. Consequently, Defendants' misuse claim based upon allegations that Plaintiffs listed the '632 patent despite the patent not meeting the statutory requirements for listing is dismissed.

2.  Whether Seventh Counterclaim Meets Applicable Pleading Standards

Even if the Court had found that Defendants' mislisting counterclaim was not precluded, that claim as well as the false marking claim, nevertheless fails.  Plaintiffs contend that the allegations for mislisting and false marking in the Seventh Counterclaim fail to meet the notice pleading standards of Rule 8 and/or the heightened pleading requirements of Rule 9(b) because, according to Plaintiffs, the Seventh Counterclaim (1) does "not identify any elements of any claim of the '632 patent that Takeda's SoluTab fails to meet," Pl. Brf. at 6; and (2) does not set forth any facts with respect to deceptive intent on the part of Plaintiffs.  As to the first assertion, the Court notes that a central allegation of the counterclaim is that "none of the claims of [the '632 patent] covers the actual composition of Prevacid SoluTab."  Counterclaim ¶ 47.  However, the counterclaim contains no facts upon which this allegation is based.  While a claim need not contain detailed factual allegations, it must contain some facts from which it can be inferred that such an allegation is plausible.  "Conclusory allegations … are not entitled to an assumption of truth at any stage in litigation."  *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1312 (Fed. Cir. 2011)

As to Defendants' false marking claim, case law is clear that Defendants must plead facts showing an intent to deceive and, further, that pleading a claim for false marking falls within the scope of Rule 9(b).  *Juniper Networks, Inc. v. Shipley*, --- F.3d ---,  2011 WL 1601995,  *3 (Fed. Cir. 2011) ("A false marking claim requires an intent to deceive the public and sounds in fraud.  As such, false marking claims must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or mistake.") (citations omitted).  To satisfy Rule 9(b), although knowledge and intent may be averred generally and a plaintiff may plead upon

information and belief, the complaint must contain sufficient underlying facts from which a court may reasonably infer that the defendant acted with the requisite state of mind. *In re BP Lubricants USA Inc.*, 637 F.3d at 1311. Based on the underlying factual allegations of the counterclaim in this case, in order to allege the requisite intent to deceive in the § 292 context, Defendants' claim should provide "some objective indication to reasonably infer that the defendant was aware that the patent" did not cover the SoluTab product to which the patent was affixed. *Id.* (citing *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) (proof that the party making a misrepresentation had knowledge of its falsity "is enough to warrant drawing the inference that there was fraudulent intent").

In response to Plaintiffs' motion, Defendants point to three allegations they claim are sufficient to plead the element of deceitful intent:

> (1) the false marking occurred "by marking the patent number on its labeling affixed to each and every bulk package." (Counterclaims ¶ 50); (2) a sophisticated drug manufacturer such as Takeda would understand that the marking of such patent number would "dissuade generic manufacturers from seeking to file an ANDA on the product and would be understood by the "public, including generic manufacturers, pharmacies, and drug retailers, that until the expiration of such patent that a generic product could not be made, used, sold, offered for sale or imported into the United States without risking patent infringement damages." (Counterclaims ¶¶ 51 and 52); and Takeda, as a sophisticated drug manufacturer, would understand that applying the mark to its bulk product package "would delay entrance into supply agreements by pharmacies and other drug retailers with generic manufacturers based on a perceived fear of potential patent infringement damages in accepting an offer-to-sell" and " would dissuade pharmacies, drug retailers, health professionals and consumers from seeking generic equivalents to the product." (Counterclaims ¶¶ 53 and 54).

Def. Brf. at 11-12. Such allegations, however, fall short of satisfying the relevant pleading standard with respect to element of intent, as they state little more than that Plaintiff marked the patent number on its product and then describe the consequences that allegedly flow from

12

a patent being marked on a drug product.  No facts are pled from which the Court can infer that Plaintiffs falsely marked the product with an intent deceive the public.  As noted above, the pleading does not allege facts, for example, from which it can be inferred that Plaintiff knew that the patent did not cover the product.  Consequently, for the reasons above, the Seventh Counterclaim shall be dismissed.

3.  Whether Defendants' Allegation of Patent Misuse In the Fourth, Fifth and Six Counterclaims Meet the Should be Stricken

The Fourth, Fifth and Sixth Counterclaims, which seek a declaration of patent invalidity for the '994, '942 and '632 patent respectively, each contain the following identical paragraph:

> [T]he filing of an objectively baseless lawsuit based on a patent that is understood to be invalid for obviousness and the continuing prosecution of such case after the rendering of the U.S. Supreme Court case of *KSR International Co. v. Teleflex.*, 127 S.C. 1727 (2007), constitutes patent misuse, and litigation misconduct.

Counterclaims ¶¶ 32, 36, and 40.  Plaintiffs argue that these paragraphs should be stricken pursuant to Rule 12(f) because these assertions are unsupported by any factual allegations.  Rule 12(f) of the Federal Rules of Civil Procedure provides: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Immaterial" material is that "which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Delaware Health Care, Inc. v. MCD Holding Co.*, 893 F.Supp. 1279, 1291 -1292 (D. Del. 1995).  "Impertinent" material does not pertain, and is not necessary, to the issues in question.  *Id.* at 1292.  "Scandalous" material "improperly casts a derogatory light on someone … reflect cruelly upon the defendant's moral character, use[s] repulsive language or detract[s]

from the dignity of the court." *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988) (citations and quotations omitted).

Plaintiffs do not state how their motion to strike meets the standard of Rule 12(f). Indeed, they do not even assert that such material is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Rather, they assert that the material sought to be struck is factually unsupported, "conclusory," and "speculative." Pl. Brf. at 11-12; Reply Brf. at 11-12. Although Plaintiffs couch their argument in terms of Rules 12(f) and Rule 8, it appears that Plaintiffs are attempting to use Rule 12(f) for a purpose better suited for a motion to dismiss under Rule 12(b)(6).

> A motion to strike under Federal Rule 12(f) is the appropriate remedy for the elimination of redundant, immaterial, impertinent, or scandalous matter in any pleading, and is the primary procedure for objecting to an insufficient defense. … Rule 12(f) also is designed to reinforce the requirement in Rule 8[d] that pleadings be simple, concise, and direct. However, as the cases make clear, it is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint, or a counterclaim, or to strike an opponent's affidavits. But as is true in other contexts, the technical name given to a motion challenging a pleading is of little importance inasmuch as prejudice to the nonmoving party hardly can result from treating a motion that has been inaccurately denominated a motion to strike as a motion to dismiss the complaint.

5C Wright and Miller, Fed. Prac. & Proc. Civ. (3d ed.) § 1380. Consequently, the Court shall consider the motion as one to dismiss under Rule 12(b)(6), and to the extent that paragraphs 32, 36, and 40 of the counterclaims attempt to assert claims for patent misuse, such claims shall be dismissed. Defendants' pleading is completely devoid of factual support for the allegations in the challenged paragraphs. Defendants do not identify any prior art allegedly rendering each of the patents obvious, and do not state any facts from which it can be inferred that Plaintiffs had knowledge that each of the patents were invalid or that the present lawsuit

is "objectively baseless." Such bald and conclusory assertions simply fail to state a claim under the appropriate standard.

D.  Conclusion

For the reasons above, Plaintiffs' motion is granted. The Seventh Counterclaim and the patent misuse claims contained in paragraphs 32, 36, and 40 of the counterclaims are dismissed.

Where a pleading is dismissed on Rule 12(b)(6) grounds, "a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Consequently, Defendants shall be granted leave to file an amended pleading. An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  May 25, 2011